## Case No. 9,752.

### In re MOORE.

[36 Leg. Int. 38; [1] 7 Reporter, 199; 26 Pittsb. Leg. J. 81.]

Circuit Court, W. D. Pennsylvania. Dec. 28, 1878.

INTEREST, BEGINS WHEN—BONDS TRANSFERRED LONG AFTER DATE OF EXECUTION—BANKRUPTCY—USURY—WITNESSES.

[1. While interest on bonds does not ordinarily begin to run until the relation of debtor and creditor is created by the transfer and delivery thereof, yet it is competent for the maker, upon transferring the bonds as collateral security, to agree that interest should be computed from their date according to their tenor, and that such interest should stand as security for a loan made expressly on the faith of it.]

[2. No objection can be made to such a pledge of the interest by persons who received other bonds of the same class several years after their date, for they must be presumed, in the absence of proof to the contrary, to have acted upon the assumption that the rest of the bonds of that series were outstanding for interest as well as principal, according to their face and tenor.]

[3. An assignee in bankruptcy held to have the right to set up the defense of usury as against a creditor of the estate; and held, further, that the bankrupt was a competent witness, notwithstanding the death of such creditor, whose claim was presented by his executors.]

On the first day of December, 1870, the bankrupt [Thomas Moore] executed a mortgage in favor of William Floyd, trustee, to secure the payment of twenty bonds, bearing

[1] [Reprinted from 36 Leg. Int. 38, by permission.]

interest, each for the sum of $5,500. These bonds were used by the bankrupt in lieu of an endorser, each being pledged as collateral for a promissory note of the same amount, which note was renewed every four months, and the discount paid with each renewal. At the time of the bankruptcy, all of the notes were outstanding, and all of the bonds held as collateral thereto. John I. House held four of the bonds as security for four notes. He also held a draft for $5,485.50, for which the bankrupt was liable, and to secure the payment of which the bankrupt gave him a paper, dated March 22d, 1877, pledging the accrued interest to the amount of $5 000. House contended that he was entitled in respect of this claim to participate in the distribution of the fund. The fund was less than the face value of the mortgage. The register held that each bond was entitled to one-twentieth of the fund, and as the four bonds held by Mr. House did not draw sufficient of the fund to pay in full the notes for which they were held as collateral, there was nothing to which the special interest pledged could apply. The fund must first go to pay the notes for which the mortgage bonds were pledged, and if any surplus were left, arising out of the four bonds held by House after paying his four notes, it would be applied to the draft held by him. In 1867 the bankrupt conveyed the same property to Moore and Pollock, receiving from them a mortgage, securing the payment of fifteen notes, each for $10,000. One of these was assigned by the bankrupt, August 10th, 1867, to Henry McCullough, as collateral security for a note for $10,000, made by the bankrupt. This assignment was not recorded until after the bankruptcy, July 3, 1877. Moore and Pollock reconveyed to the bankrupt, February 28th, 1868, and other assignments of parts of their mortgage were either re-assigned or satisfied, and on the 11th of May, 1875, the bankrupt entered a formal satisfaction in full. McCullough having died, his executors claimed to have priority over the creditors under the later mortgage of the bankrupt. The assignee set up the defence of usury, and the bankrupt was examined as a witness. The register held that the McCullough claim is good against the bankrupt, but must be postponed until the creditors under the later mortgage of the bankrupt have been paid in full; that the assignee has a right to set up the defence of usury, and that the bankrupt is a competent witness, notwithstanding the death of McCullough. To the several findings and rulings of the register, exceptions were filed, and after argument, were overruled in the district court.

Sterrett, Kennedy & Doty, for appellants.
Thos. M. Marshall, for Floyd et al.
Robert Woods, for McCullough's executors.

McKENNAN, Circuit Judge. I think the basis of computation of the value of the bonds chargeable upon the fund for distribu-

tion, which was adopted by the register and approved by the court below, was erroneous. It is undoubtedly true, as a general rule, that no interest accrues upon a note or bond until the relation of debtor and creditor is created by the transfer and delivery of such note or bond by the maker to another, for a sufficient consideration; and this is so for the reason that such is the constructive import of the contract between the maker and holder of such instrument. But it is none the less certain that the maker of a note may make himself liable for interest apparently accrued upon it, where he expressly stipulates to become so for a lawful consideration. It was altogether competent then for the bankrupt and John I. House to agree that the interest upon the bonds transferred to the latter as collateral security should be computed from their date according to their tenor, and that the whole or a part of such interest should stand as a security for a loan made expressly upon the faith of it. Nor have the holders of the other bonds of the same class any equity to gainsay such an arrangement, because, as such bonds were hypothecated to them several years after date, they must be presumed, in the absence of proof to the contrary, to have acted upon the assumption that the bonds not held by them were outstanding for interest as well as principal, according to their face tenor.

The proper method, then, of determining the value of the collateral securities, is to compute the interest upon all of them from the date of their last hypothecation to the time of distribution, and to add to the amount of the securities held by John I. House the interest which had accrued upon them before the date of their hypothecation, and, as the fund for distribution is insufficient to pay in full the debts for which the collaterals were pledged, to apportion it among the creditors upon the basis of the value, thus ascertained, of the securities hypothecated to them respectively.

In regard to the exceptions filed in behalf of the estate of McCullough, I deem it necessary to say that they were properly overruled by the court below.

The order of the district court confirming the report of the register is, therefore, reversed, and the cause is remanded to that court with directions to cause distribution to be made of the fund in the hands of the assignee among the creditors entitled to it, in conformity with the method herein indicated.

MOORE (ALEXANDRIA v.). See Case No. 185.

MOORE (BANK OF COLUMBIA v.). See Cases Nos. 875 and 876.

MOORE (BANK OF METROPOLIS v.). See Case No. 901.

MOORE (BANK OF UNITED STATES v.). See Case No. 930.