93 209
144 457

# The Philadelphia Trust, Safe Deposit and Insurance Company's Appeal.

## Armstrong's Estate.

1. Where by the terms of a will a dry trust is created for the benefit of a woman who is neither married nor in contemplation of marriage, the mere fact that on a certain contingency, which might never happen, the trustee was directed to execute a conveyance, after the death of the woman, to her devisees, does not change the dry character of the trust and make it active.

2. An estate was given to H. for life, and the remainder expressly limited to the heirs of her body lawfully begotten. There were no other words in the will which changed or qualified the import of this language. *Held*, that an estate tail was thereby created; that the words used were the proper and technical words to create an estate tail, and that they must have their legal effect whatever the testator may have intended.

February 18th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

[Phila. Trust, Safe Dep. & Ins. Co.'s Appeal.]

Appeal from the Court of Common Pleas, No. 2, of *Philadelphia county* : Of January Term 1880, No. 141. In Equity.

Appeal of the Philadelphia Trust, Safe Deposit and Insurance Company, trustees, from the decree of the court directing said trustees to transfer certain property in their hands to Henrietta Armstrong. The bill in equity was filed by Henrietta Armstrong against the appellants as trustees under the will of Thomas Armstrong. It set forth that Thomas Armstrong died in 1842, leaving a will, wherein he devised, after the death or marriage of his widow, unto his son Edward, certain real estate, upon the following trusts :

" I give and devise to my son, Edward, all that house and lot of ground, with the appurtenances, adjoining the south side of my said dwelling-house, to hold to him, his heirs and assigns, to and for the uses, intents and purposes hereinafter expressed and declared of and concerning the same, that is to say, in trust, that he shall permit my daughter, Henrietta, to receive the rents thereof for her sole use during her lifetime, to the intent that the same shall not be liable to the contracts or control of any husband with whom she may intermarry, and from and immediately after her decease, then to the heirs of the body of the said Henrietta, lawfully begotten. But in case the said Henrietta should not marry, or marry and have no such issue, then upon trust that he, the said Edward, and his heirs, executors or administrators shall and will grant and convey the fee-simple inheritance of the before-described premises unto such person or persons, in such manner as the said Henrietta, whether she be married or sole, by her last will and testament, in writing, signed, sealed and attested in the presence of two credible witnesses, may order and direct. But if she should die without making such disposition, then in trust for my two daughters, Mary McKeen and Emeline Bent, and their heirs and assigns for ever ; and it is my will and request that the said Edward pay off the ground-rent and mortgage on the before-mentioned premises, that the same may be free from encumbrance at the time my said daughter may be entitled to receive the rents thereof, as aforesaid, or as soon afterwards as he may be able to discharge the same."

That testator left surviving him a widow, since deceased, and four children. That Edward having died, the Philadelphia Trust, Safe Deposit and Insurance Company was appointed trustee in his stead by the Orphans' Court ; and that Henrietta was neither married nor in contemplation of marriage at the death of testator, and has remained unmarried. That by virtue of a decree of the Orphans' Court, the said real estate was lately sold at private sale, under the Act of April 18th 1853, all interested parties consenting thereto. That a deed was also executed by the oratrix, duly recorded, &c., which was intended to bar and dock the entail. And

that the purchase-money was received by the Philadelphia Trust Company, and is held upon the same trusts as heretofore. That the trust is not now, and never was, an active one, and that the oratrix took a legal estate in fee-tail, and that the said entail is now barred; and that the oratrix is therefore absolutely entitled to the securities in the hands of the present trustee, and prays accordingly.

The answers admitted the facts averred in the bill, and submitted to the judgment of the court in respect to the questions of law involved, and prayed to be thence dismissed.

The cause came on for hearing upon bill and answer before Hare, P. J., and Fell, J., and the court entered a decree directing the Trust Company to transfer, absolutely, the property in its hands to the complainant. From this decree this appeal was taken.

*L. L. Eyre* and *R. L. Ashhurst*, for appellant.—The devise by testator to his son created an active trust in favor of his daughter for life, followed by alternative limitations in fee. The operation of the rule in Shelly's case must be held in obeyance until the intention of the testator shall have been discovered: Guthrie's Appeal, 1 Wright 13.

The estate given to the first taker, if an entail at all (which the appellant denies), is not expressly created, but must be implied from the context. The expression "heirs of the body" is, to be sure, the apt expression, but the particular estate is given as a sole and separate use, and consequently is not technically sufficient to create an express entail. Can a fee tail be implied? There are two circumstances which may rebut the presumption of an implied entail: that the estate is intended to determine upon 1. A failure of children only. 2. A failure of heirs within a given definite time: Smith on Executory Interests 301. The failure in our case is to happen within a definite time, viz.: the death of the equitable life-tenant. The words are, " but in case the said Henrietta should not marry, or marry and have no such issue," then over. These words, if they do not mean that the contingency was to depend upon herself not bearing, at any time before her death, children, who (or whose heirs) should survive her, mean absolutely nothing. If the failure of issue might occur in a century from the creation of this alleged entail, the words above used would be irrelevant.

This case is ruled by Ingersoll's Appeal, 5 Norris 240.

*Rowland Evans*, for appellee.—The trust in this case is simply what is known as a dry naked trust—no active duties—nothing to prevent the operation of the Statute of Uses. The purpose was clearly to create a " separate use." " A gift to or for the sole use or benefit of a woman means prima facie separate use:" Hawkins, Wills 116. And in the next sentence our testator declares what

is the object of this trust—" to the intent that the same shall not be liable to the contracts or control of any husband with whom she may intermarry."

These words would be conclusive that the object of the trust was simply a trust against coverture, even if the duties of the trustees had been active: Yarnall's Appeal, 20 P. F. Smith 335 ; Ogden's Appeal, Id. 501 ; affirmed in Williams' Appeal, 2 Norris 377, And Miss Armstrong being neither married nor in contemplation of marriage at the death of the testator, a trust against coverture cannot be sustained : Smith *v.* Starr, 3 Whart. 62 ; Hammersly *v.* Smith, 4 Id. 126 ; McBride *v.* Smyth, 4 P. F. Smith 250.

If the trust is out of the question, Miss Armstrong has undoubtedly an estate tail. The estate is first given to her for life and the remainder expressly limited to the heirs of her body : Bender *v.* Fleurie, 2 Grant 345 ; Taylor *v.* Taylor, 13 P. F. Smith 486 ; Linn *v.* Alexander, 9 Id. 43. This case is clearly distinguishable from Ingersoll's Appeal, *supra.* In that case there was an active trust—the trustees were to receive and pay over the income to the *cestui que trust.* In our case there is no such duty, nor are any other duties imposed which require the trustees to hold the property. In Ingersoll's Appeal (throwing the trust out of the question) there was a gift of a fee simple ; this was undisputed, for the testator died after the Act of 1855, Purd. Dig. 620 ; the court decided that the limitations over did not reduce this to an estate tail, and, not being too remote, were valid by way of executory devise, and could not be defeated by any act of the first taker. In our case the first estate given being a fee-tail, the limitation over, whether on a definite or indefinite failure of issue, is a contingent remainder.

Mr. Justice MERCUR delivered the opinion of the court, May 3d 1880.

This contention arises under the will of Thomas Armstrong. It declares, " I give and devise to my son Edward all that house and lot of ground, with the appurtenances adjoining the south side of my said dwelling-house, to hold to him, his heirs and assigns, to and for the uses, intents and purposes hereinafter expressed and declared of and concerning the same ; that is to say, in trust that he shall and will permit my daughter Henrietta to receive the rents thereof for her sole use during her lifetime, to the intent that the same shall not be liable to the contracts or control of any husband with whom she may intermarry, and from and immediately after her decease, then to the heirs of the body of the said Henrietta lawfully begotten ; but in case the said Henrietta should not marry, or marry and have no such issue, then upon trust that he, the said Edward, and his heirs, executors or administrators, shall and will grant and convey the fee-simple inheritance

of the before-described premises unto such person or persons, in such manner as the said Henrietta, whether she be married or sole, by her last will and testament, in writing, signed, sealed and attested in the presence of two credible witnesses, may order and direct. But if she should die without making such disposition, then in trust for my two daughters, Mary McKeen and Emeline Bent, and their heirs and assigns for ever."

Edward, the trustee named, having died, the appellant was appointed in his place by the Orphans' Court. The real estate, by virtue of a decree of said court, was sold at private sale under the Act of Assembly. The record of the proceedings declared that the purchaser should take an estate in fee-simple, discharged of all trusts, contingent remainder and executory devise limited thereon. Henrietta, the appellee, also executed to the purchaser a deed intended to bar the entail. On motion in open court, it was duly entered of record in the Common Pleas of said county. The purchase-money was received by the appellant. The appellee filed this bill praying for a decree that, under the will, she took an absolute legal estate in fee in the real estate, and that the appellant be required to assign and pay over to her the proceeds of the sale thereof. The court decreed in accordance with her prayer.

We will first consider the character of the trust created by the will. Its language substantially is, in trust that the trustee shall permit Henrietta to receive the rents thereof for her sole use during her life; and the intent of the trust is declared to be, that the property shall not be liable to the contracts or control of any husband she may thereafter have. No care or duty was imposed on the trustee in regard to the management or protection of the property, nor as to the collection or payment of the rents. He had no active duties to perform. It was a dry trust. The purpose was to create a separate use in Henrietta. She was *sui juris*. She took the whole beneficial interest devised to her. Her estate, as well as that given in remainder, were both legal, for the trust was executed under the statute: Physick's Appeal, 14 Wright 128; Nice's Appeal, Id. 143; Ogden's Appeal, 20 P. F. Smith 501; Megargee *v.* Naglee, 14 Id. 216; Kinsel *v.* Ramcy, 6 Norris 248. The mere fact that on a certain contingency, which might never happen, the trustee was directed to execute a conveyance after her death to her devisees, did not change the dry character of the trust and make it active: Bradley's Appeal, 36 Leg. Int. 38. Still further, Henrietta was neither married nor contemplating marriage at the death of the testator. She never married. The expressed purpose of the trust being solely to protect against any husband she might have, it cannot be sustained. A separate use for a woman cannot be created unless she is covert,

[Phila. Trust, Safe Dep. & Ins. Co.'s Appeal.]

or is in immediate contemplation of marriage: McBride *v.* Smyth, 4 P. F. Smith 245. The trust, therefore, failed to take effect.

What estate, then, did Henrietta take? It was given to her for life, and the remainder expressly limited to the heirs of her body lawfully begotten. These are the proper and technical words to create an estate tail. They must have their legal effect, whatever the testator may have intended: Bender et al. *v.* Fleurie, 2 Grant 345; Linn *v.* Alexander, 9 P. F. Smith 43; Taylor *v.* Taylor, 13 Id. 481. No words in the will changed or qualified the legal import of this language. An estate tail was thereby created. It was duly barred by the conveyance, and the learned judge correctly decreed in favor of the appellee.

> Decree affirmed, and appeal dismissed at the costs of the appellant.