## Kershner's Estate

*John W. Forry, Paul H. Edelman,* for executors.
*Dawson H. Muth, R. Solomon Bear,* for petitioner.

MARX, P. J., February 19, 1955.—Joseph I. Kershner died February 18, 1953. His last will, dated July 5, 1950, was duly probated on January 29, 1954. Letters testamentary were granted to Irvin S. Kershner and George C. Kershner, executors named in the will.

On June 26, 1954, a citation issued, directed to the executors to perform certain acts. The executors filed their answers thereto and the matter came before this court on argument, and on November 20, 1954, the court entered a decree, making the citation absolute, requiring the respondents, executors aforesaid, to comply with the testamentary dispositions, devises, and options to purchase, conformably with the directions under the revised Fiduciaries Act of 1949. On November 30, 1954, the respondents filed exceptions to the aforesaid action of the court, charging error: (1) In holding that the trust created by decedent, Joseph I. Kershner, on August 30, 1948, was executed in the trustee, the intended settlor; (2) in holding that the said trust was testamentary in character; (3) in failing to hold that the trust was executed

immediately in the beneficiaries, the eight children of Joseph I. Kershner, decedent settlor.

By his will, the testator gave and devised to his son, Milton H. Kershner, "a tract of land which is a portion of the farm which I own", described as follows:

"ALL THAT CERTAIN piece of land in Windsor Township, Berks County, Pennsylvania, near the public road from Penna. Route 122 toward Windsor Castle, bounded and described as follows,—Beginning at an iron stake corner of this and other land of Milton Kershner. Thence along land of the said Milton Kershner, North seventy degrees ten minutes West one hundred eighty feet to a stake, Thence along land of Joseph Kershner (of which this was a part) North twenty degrees fifty one minutes East sixty seven feet to a post corner Thence along the same South seventy degrees East one hundred ninety five and four tenth feet to a stake corner, Thence along land now or late of George Seip, South thirty two degrees fifty two minutes West sixty seven feet to the place of Beginning. Containing 44.96 Perches of land."

The testator further disposed as follows:

"I order and direct that my son, MILTON H. KERSHNER, shall have the privilege to purchase from my estate the two fields consisting of approximately 39 acres which join the lands of Curtis Schappell, Clark Zimmerman and a Township road leading to the macadam road which leads from Hamburg to Windsor Castle and also one-half of the woodland in acreage, one-half being approximately three acres adjoining the aforesaid fields. The purchase price at which my son, Milton H. Kershner, shall have a right to buy the aforesaid land shall be FORTY AND 00/100 DOLLARS ($40.00) per acre. In the event that my son, Milton H. Kershner, shall desire to exercise this privilege, he shall give notice in writing to my Executors of his intention to do so within a period

of ninety (90) days after letters are taken out in my estate. If my said son exercises his privilege to purchase the above described land, then and in that event, he, his heirs and assigns, shall have the right and privilege forever to cross and recross the private land leading Eastward from the home in which I now live to the above described fields, the said land being through my lands, for the purpose of gaining access to and egress from the said fields, over and across the lands which I now own."

We found:

"Upon failure of the executors to carry out the aforesaid provisions of the will, the petitioner asked a citation directed to the executors, requiring them to reply to the averments and prayer of his petition. The executors thereupon filed an answer setting up a contract or declaration of trust executed by the decedent, under date of August 30, 1948, recorded in the Office of the Recorder of Deeds in and for Berks County on September 2, 1948 (Miscellaneous Book 163, page 617) reading as follows:

"WHEREAS, I, the undersigned JOSEPH I. KERSHNER, SR., am the owner in fee of a certain farm and tract of land situate in Windsor Township, Berks County, Pennsylvania, containing 123 Acres, more or less; and

"WHEREAS, I have eight (8) children who are entitled to an equal voice in the disposition of the aforesaid farm.

"NOW, THEREFORE, in consideration of natural love and affection, and for the further consideration of the sum of ONE DOLLAR ($1.00) to me in hand paid by each of my said eight (8) children, I do hereby covenant and declare that I hold title to the aforesaid farm of 123 Acres, more or less, in trust for the joint benefit of all of my said eight (8) children, and that I will not convey, mortgage or other-

wise dispose of the title to my said farm without the written consent of each of my eight (8) children, namely: George C. Kershner, Mrs. Mary Focht, Irvin Kershner, Mrs. Katie Kerchner, Joseph I. Kershner, Jr., Walter H. Kershner, Milton H. Kershner, Alvin C. Kershner.

"IN WITNESS WHEREOF, I have hereunto set my hand and seal this 30th day of August A. D. 1948.

Joseph I. Kershner (Seal)."

"Witnessed by
George C. Kershner
Alvin C. Kershner
Joseph I. Kershner, Jr.
Walter Kershner"

(Acknowledged on August 30th, 1948. Recorded in the Recorder's Office of Berks County Miscellaneous Book 163, page 617, on September 2, 1948.)

The residue and remainder of his estate, the testator bequeathed and devised to his children, "excluding Milton H. Kershner, in seven (7) equal shares, share and share alike, their heirs and assigns forever, it being my intention to exclude my son, Milton H. Kershner, in this the residuary clause of my Will because of the benefits bestowed upon him by the first two paragraphs hereof."

We concluded that "the intended trust was passive in all respects, that it was executed in the trustee, the intended settlor, the decedent Joseph I. Kershner, that all rights conferred, under the so-called declaration of trust, given to the named eight children, were testamentary in character and were superseded by the testator's dispositions under the probated will." The citation was thereupon made absolute.

It must be noted that after the delivery of the agreement of August 30, 1948, in which decedent said, "I do hereby covenant and declare that I hold title to the

aforesaid farm of 123 Acres, more or less, in trust for the joint benefit of all of my said eight (8) children, and that I will not convey, mortgage or otherwise dispose of the title to my said farm without the written consent of each of my eight (8) children", decedent, believing and considering that the covenant was limited to the term of his life, under the third item of his will, dated July 5, 1950, bequeathed and devised the residue of his estate, to his "children, excluding Milton H. Kershner, in seven (7) equal shares, share and share alike, their heirs and assigns forever, it being my intention to exclude my son, Milton H. Kershner, in this the residuary clause of my Will because of the benefits bestowed upon him by the first two paragraphs hereof."

That disposition would indicate that, at least in the mind and understanding of decedent, final disposition of his estate could be made by will. Apparently it was the understanding of decedent and, possibly, of the seven children as well. This conclusion fits into the picture as we believe was intended and lends support to the conclusion that the testamentary disposition must prevail.

The exceptants, in their brief of argument, say "The Declaration of Trust is definite and clear. It contains no ambiguities. . . . The trust res is definitely identified. The beneficiaries are clearly named. The purposes of the trust are sufficiently designated" (citing §46, com. (a), A. L. I. Restatement of the Law of Trusts; Raybold v. Raybold, 20 Pa. 308.

"No active duty whatsoever is imposed upon the trustee. The Court rightly held . . . that the trust was passive, . . . the instrument did admit of no other conclusion."

The exceptants then charge error in the conclusion that the trust is testamentary, and that, as a passive trust, it was executed in the settlor.

"As has been frequently said, the essential elements of a declared trust are the subject-matter of the trust, the designation of the cestui que trust, and the right or interest of the cestui que trust in the subject-matter of the trust. It need not be created by writing, but is required by the statute to be 'manifested by writing signed by the party holding the title thereof.' If in writing, the declaration need not be expressed in any particular form of words; even the words 'trust' or 'trustee' need not be used, but the language employed must be such as to disclose with certainty the purpose to create a trust. It may be couched in any language which is sufficiently expressive of the intention to create a trust": Ranney v. Byers, 219 Pa. 332, 334; Smith's Estate, 144 Pa. 428; Cumberland County v. Lemoyne Trust Company, 318 Pa. 85, 95.

"Not only must the settlor have power to create the trust, manifest an appropriate intent, and satisfy the requirements . . . with regard to formality, an identified trust res, and a competent cestui que trust, but he must also impose upon the trustee sufficient duties to make the trust an active or special trust, as distinguished from a passive, bare, dry, naked, general trust, or a use. If the trust is to have permanence, not only must words of trust be used, but the terms of the trust must require the trustee to do some positive act, the performance of which by the trustee as such is necessary to carry out the purpose of the settlor": Bogert on Trusts and Trustees, vol. 1A, §206; Hemphill's Estate, 180 Pa. 95; Philadelphia Trust, Safe Deposit and Insurance Company's Appeal, 93 Pa. 209, 213; Kinsel v. Ramey et al., 87 Pa. 248.

Decedent, owner of the intended res of the trust said preliminarily he had eight children "entitled to an equal voice in the disposition of the aforesaid farm". He did not say, and the record of the case contains no fact or evidence in support of the statement that the

children, or any of them, had any interest whatsoever in the farm, his absolute estate. He further specified cash payments by the eight children, of $1 each, and on the basis thereof, declared that he held title to the farm "in trust for the joint benefit of all of my said eight (8) children". He covenanted that he "will not convey, mortgage or otherwise dispose of the title to my said farm without the written consent of each of my eight (8) children, namely . . .".

Decedent imposed no duties on the trustee. He appointed no term. The declaration makes no provision for use or transfer to the trustee, nor to the eight children, or any of them, of the income of the farm. It makes no provision for the payment of taxes, current repairs or additions. In every sense the declared trust is passive. No indication is given of the burden of management and of eventual transfer to the corpus of the trust to those designated as remaindermen.

"Where the owner of property purports to create a trust inter vivos but no interest passes to the beneficiary before the death of the settlor, the intended trust is a testamentary trust and is invalid unless the requirements of the statutes relating to the validity of wills are complied with": A. L. I. Restatement of the Law of Trusts, §56; Tunnell's Estate, 325 Pa. 554; Chestnut Street National Bank v. Fidelity Insurance Trust and Safe Deposit Company, 186 Pa. 333; Frederick's Appeal, 52 Pa. 338.

The exceptions to the decree of confirmation of November 20, 1954, are accordingly dismissed. The decree then entered is confirmed and the respondents under the citation are directed to act accordingly, with the findings set forth and contained in our said adjudication.