## Kinsel *versus* Ramey *et al.*

A. devised land to his wife for life, remainder to trustees of B. " for her only use and benefit * * * and the heirs of her body lawfully begotten," without imposing duties upon the trustees. *Held*, that the trust was passive, and that the words " heirs of the body" were words of limitation determining the character of the estate devised, and were not a mere *descriptio personarum*, of those who were to take as purchasers after the determination of the trust.

May 31st 1878. Before AGNEW, C. J., GORDON, WOODWARD, and TRUNKEY, JJ. SHARSWOOD, MERCUR and PAXSON, JJ., absent.

Error to the Court of Common Pleas of *Blair county:* Of May Term 1878, No. 172.

This was an action of ejectment, brought by Jacob Kinsel against Daniel K. Ramey, John C. Kinsel, Magdalene Burkhart (formerly Kinsel), and her husband, and Rebecca Stiffler (formerly Kinsel), and her husband.

The facts were as follows:

George Kunsz, whose will, dated August 18th 1824, was admitted to probate November 17th 1829, was the owner of the lands in dispute. He left to survive him a widow and four children, Jacob, Magdalene, Elizabeth and Anna Maria, married to John Kinsel. His personal property was in part bequeathed to his wife for life,

[Kinsel v. Ramey.]

and after her death in equal parts to the children named (Mrs. Kinsel's share going to trustees, "for her sole use and that of her children"), and in part directly to the children and Mrs. Kinsel's trustees, the portion held by the latter being again "in trust for her own sole use and that of her children." His real estate was devised to his wife for life. "And after the decease of my wife, in case she survives me, I direct that my plantation on which I live, in Allegheny township, in the county of Huntingdon, aforesaid, containing two hundred and twenty-eight acres, be divided into four equal shares, and appropriated by my executors amongst my four youngest children in the following manner, viz. : The first share or part of my lands I give and bequeath to Christian Gost and Henry Slinglough of Frankstown township, in the county of Huntingdon, and Commonwealth of Pennsylvania, the executors hereinafter named of this my last will and testament, and John Keller, Jr., son of John, of Morris township, in the county of Huntingdon, and Commonwealth of Pennsylvania, in trust for and to the only use and benefit of my daughter, Anna Maria Kinsel, wife of John Kinsel, of Allegheny township, county of Huntingdon, and Commonwealth aforesaid, and the heirs of her body lawfully begotten, who are to have my dwelling-house, buildings and orchard on her share of the land on which these improvements are, on the north part of the whole tract of land from the sinking run. And provided the said Anna Maria Kinsel lives until one or more of her children arrives at the age of twenty-one years, and she is agreed, I direct that one or more of her sons undertake and perform the trust and duty for their mother, that the said Christian Gost, Henry Slinglough and John Keller are hereby authorized to perform, by this my last will and testament, and the said Christian Gost, Henry Slinglough and John Keller are then to surrender up their trust and settle up their account, if not previously done by them, or the survivor of them, with the Orphans' Court of the county of Huntingdon, and be discharged by the said court from the trust aforesaid. And the said Anna Maria Kinsel is to have her part of the tract of land at the same price as the other parts of the whole tract of land aforesaid, and also a due proportion of timber lands to the same, which land, houses, buildings and other improvements I bequeath to the said Anna Maria Kinsel under the trust aforesaid, for her own sole use and that of the heirs of her body lawfully begotten, or their assigns for ever."

The remainder of the will designated the tract each child should receive, and afterwards, in 1835, lines were run by William Reed, a surveyor, in accordance with the will, and one-fourth of the whole tract was set off to the trustees of Mrs. Kinsel. In 1837, Magdalene (Gripe), Mrs. Kinsel's sister, conveyed her one-fourth of the tract to Jacob Kinsel, the plaintiff, and a son of Mrs. Kinsel, the

purchase-money being derived from the personal property of George Kunsz. "In trust, nevertheless, for the use of the aforesaid Anna Maria Kinsel, and her children, according to the estate given them, collectively or severally, in and by the bequest of personal property aforesaid, as contained in the last will and testament of the aforesaid George Kunsz, deceased, they, the said Anna Maria Kinsel and her children, to have and to hold the same, estates and interest, in the land hereby conveyed, to which they are entitled to the trust money hereby invested in the said land under and according to the provisions of the last will and testament aforesaid, and special reference is hereby made to said will to ascertain and fix the interests and estates hereby conveyed to the said Jacob Kinsel, in trust for the use of the said Anna Maria Kinsel and her children so far as respects the rights of the said Anna Maria Kinsel and of her children as between themselves."

Mrs. Kinsel had four children, Jacob the plaintiff, Magdalene (Burkhart), Rebecca (Stiffler) and John, three of the defendants.

In 1868 Jacob was adjudicated a bankrupt, and his assignee conveyed to Daniel K. Ramey, another defendant, all Jacob's interest in the lands in suit. In 1876, Mrs. Kinsel died, without having barred the entail created by the will, and Jacob thereupon claimed title as heir in tail to the one-fourth originally surveyed to her in 1835, and under the deed of 1837, to the undivided one-fifth of the tract conveyed by Madalene Gripe. It was conceded, that one undivided fifth part of the latter tract vested in Jacob by the deed, passed to his assignee, and was properly conveyed to Ramey.

The court (Dean, P. J.) directed a verdict for the plaintiff for the undivided one-fourth of the undivided one-fifth of the Gripe tract, and for the whole of the other tract, subject to the opinion of the court on the following reserved point of defendants:

"That as to the one-fourth of the real estate surveyed off to Anna Maria Kinsel by William Reed, the legal title being devised to trustees for the use of Anna Maria Kinsel, a married woman, and for the heirs of her body, and there being no union of the legal and equitable estate, the rule in Shelley's case does not apply, and under the will, an equitable life estate in the one-fourth vested in Anna Maria Kinsel, and a legal estate in her children."

Judgment was subsequently entered for the defendants, *non obstante veredicto*, upon this point the court holding that, under the will, Mrs. Kinsel's trustees had no duties to perform in reference to her heirs, and that the estate limited to the latter became at once an executed legal estate under the Statute of Uses or in the language of the opinion:

"The trust then to Mrs. Kinsel being active, the use was not executed by the statute, and she had but an equitable estate for life; the trust as to the heirs being passive, the estate in them

[Kinsel v. Ramey.]

became, immediately, an executed legal estate, which they took as purchasers."

To this judgment the plaintiff took a writ of error, assigning the entry of judgment for the defendants on the reserved point.

*S. S. Blair* and *S. M. Woodcock*, for plaintiff in error.—Mrs. Kinsel's estate was a vested remainder in tail after the life estate of the testator's widow, and the plaintiff, her oldest son, takes as heir in tail. There is nothing in the will to show that the words "heirs of her body" are used as synonymous with "children" or "heirs" and they must be allowed to have their technical meaning.

The rule in Shelley's case has no application here.

*H. M. Baldridge*, for Mrs. Stiffler, one of defendants in error. —The whole will indicates that the testator intended to use the words "heirs of the body" as synonymous with "children." The manifest intention overrides technical words.

Mr. Justice GORDON delivered the opinion of the court, October 7th 1878.

This was an action of ejectment instituted for the purpose of settling the title to about one hundred and thirty-five acres of land, formerly the property of George Kunsz, now deceased, and the question on which the case turns grows out of the terms and conditions of his last will and testament. By that instrument, dated August 18th 1824, and probated November 17th 1829, he devised to his wife Magdalene, for life, the farm, containing about two hundred and twenty-eight acres, on which he lived, and directed that, after her death, it should be divided equally among his four youngest children. One of these four parts, containing about sixty-seven acres, he devised to Christian Gost and Henry Slinglough, "in trust to and for the only use and benefit of my daughter Anna Maria Kinsel, of Allegheny township, county of Huntingdon, and commonwealth aforesaid, and the heirs of her body lawfully begotten, who are to have my dwelling-house, buildings and orchard on her share of the land, on which these improvements are, on the north side of the whole tract of land from the sinking run." He then provides, that, if she should live until one or more of her sons reaches the age of twenty-one years, the said trust shall devolve upon him or them, and then adds, "And the said Anna Maria is to have her part of the tract of land at the same price as the other parts of the whole tract of land aforesaid, and also a due proportion of timber lands to the same, which lands, houses, buildings and other improvements I bequeath to the said Anna Maria Kinsel, under the trust aforesaid, for her own sole use and that of the heirs of her body lawfully begotten or their assigns for ever." One other of the parts above mentioned he

devises in fee to his daughter, Magdalene Gripe. By the same will certain personal property, or the proceeds thereof, was directed to be passed or paid over to the trustees aforesaid, for the use of Mrs. Kinsel and her children. The money realized from this bequest was invested in the purchase of the land devised, as above-mentioned, to Magdalene Gripe, who, on the 29th of December 1837, executed a deed for the same to Jacob Kinsel, in trust for Anna Maria Kinsel and her children. It seems to be admitted that, as this trust was simple and unconnected with any active duties in the trustees, it was executed in the beneficiaries as joint tenants or by our statute as tenants in common of the fee. Jacob Kinsel, the plaintiff, being one of the four children of Mrs. Kinsel, took the fee in one-fifth part of the said purchase from Mrs. Gripe. Jacob became bankrupt in 1868, and his assignee, in August of that year conveyed to Daniel K. Ramey, one of the defendants, all his (Jacob's) interest in the lands now in suit. Afterwards, in May 1876, Anna Maria Kinsel died, leaving the children already mentioned to survive her, and to whom descended the title to her one-fifth part of the Magdalene Gripe tract. Concerning this last-mentioned piece of land we have no dispute over the ruling of the court below. It is now conceded, and so the instruction was, that the one-fifth, which vested in the plaintiff, by virtue of the Magdalene Gripe deed, in 1837, passed by the assignee's deed to Ramey, and for that there could be no recovery, whilst for the one-fourth of the one-fifth, which descended to the plaintiff from his mother, after the date of the assignment, a verdict might be had for the plaintiff. The court further directed the jury to return a verdict for the plaintiff for the sixty-seven acres heretofore mentioned as devised in trust for Mrs. Kinsel and the heirs of her body, reserving, however, the question raised by the defendant's fifth point. That point reads as follows: "That as to the one-fourth of the real estate surveyed off to Anna Maria Kinsel, by William Reed, the legal title being devised to trustees for the use of Anna Maria Kinsel, a married woman, and for the heirs of her body, and there being no union of the legal and equitable estate, the rule in Shelley's case does not apply, and, under the will, an equitable estate in one-fourth vested in Anna Maria Kinsel and a legal estate in her children." On this point the court finally entered judgment for the defendants, notwithstanding the verdict, holding that the trust as to Mrs. Kinsel was active, and that she had, therefore, but an equitable estate for life, but as to her children, the trust, being passive, was at once executed in them, and they took the legal estate as purchasers. In other words, if we understand the learned judge, the estate vested in the children charged with a use for the mother during life. In order to reach this result we must read "children" for "heirs of her body," and in this manner raise a trust for the "sole use" of Anna Maria Kinsel and her children,

[Kinsel *v.* Ramey.]

executing it as to her children, but continuing it as to her as an active trust.    The serious difficulty with this conclusion is, that it does not result from the language of the will.

From that instrument nothing appears to control or modify the technical meaning of the terms used ; hence the words "heirs of the body" must be taken as words of limitation determining the character of the estate devised, and not as a mere *descriptio personarum* of those who are to take as purchasers after the determination of the trust.

If, indeed, we were to regard the trust for Mrs. Kinsel as active, the case would be different, and the result reached by the court might be regarded as substantially correct.    For though the trust could not be held as executed in the children, yet, it must be regarded as executed in the trustees during Mrs. Kinsel's life, with a contingent remainder over to the heirs of her body, and in such case her eldest son would take, not as heir of his mother, but under the will, as a purchaser.

The will, however, imposes no active duty whatever upon the trustees ; they have nothing to do with the rents, issues and profits of the land, neither do they hold the title for any designated remaindermen ; it is therefore obvious that the case is one falling within the Statute of Uses.    Such being the case, we must hold that an estate of inheritance vested in Anna Maria Kinsel which, upon her death, descended to her eldest son, Jacob Kinsel, as her heir at law.    From this it follows that as at the time of the assignment in bankruptcy the plaintiff had no title whatever in this property, none passed to his assignee, and so the assignee had nothing therein which he could sell to Ramey.

> The judgment is reversed, and it is ordered that judgment be entered on the verdict for the plaintiff.