Sheridan et al., Appellants, *v.* Coughlin et al.

Argued April 12, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*M. F. McDonald,* with him *Gilbert S. McClintock,* for appellants.

*C. W. Dickson,* with him *R. L. Coughlin,* for appellees.

OPINION BY MR. JUSTICE LINN, May 21, 1945:

The plaintiffs, tenants in common with defendants, appeal from the denial of an account. The bill, which was filed December 5, 1941, prayed (1) for an order directing defendants to execute and deliver to the plaintiffs deeds in fee simple for specified undivided interests in certain real property in accord with two declarations

of trust made part of the bill, and (2) that defendants account and pay to plaintiffs their proportionate shares of income, etc., received by defendants from the property for the account of the plaintiffs.

In two declarations of trust, under seal, dated October 7, 1907, defendants' ancestor, Louise Barring recited that she ". . . took title in fee simple to three certain pieces or lots of land" in the City of Wilkes-Barre; after describing the lots, the one deed then continued: "I HEREBY acknowledge and declare that my name was used in the deeds for said properties as trustee and in trust for the said Patrick M. Gilligan and Patrick J. Finn to the extent herein mentioned, and that I now hold the same in trust for the said Mary Gilligan, John Gilligan, James Gilligan and Frank Gilligan, widow and heirs of the said Patrick M. Gilligan, deceased, and that I will at any time upon request of the said Mary Gilligan, John Gilligan, James Gilligan and Frank Gilligan, their heirs or assigns, convey said premises to them as I may thereunto be required to the extent of their interest therein." The other deed contained a declaration in the same words for the benefit of John T. Lenahan, his heirs or assigns. Each declaration specified the fractional undivided interests of the beneficiaries, which, however, did not include the entire title; part of the estate was vested in Louise Barring as absolute owner. No request to convey was made in the lifetime of Louise Barring, who died November 8, 1925. She left surviving her, three daughters, two of them, defendants, the third having conveyed to the two defendants her interest in the land. Mrs. Barring, during her life and her heirs, since her death, have managed [1] the property and received the income from them. There is evidence that defendants had con-

---

[1] The premises are occupied by a "gas station and bill boards." ". . . all of the improvements were erected prior to Mrs. Barring's death."

structive notice of the plaintiffs' interests at least since 1925.

The learned court held (1) that on the death of Louise Barring the express trust to convey terminated and the land passed to her heirs, on a constructive trust to convey on request of the beneficiaries, and decreed that they make such conveyance; (2) refused an account of income and profits on the ground that plaintiffs' delay in bringing suit constituted laches.

In her declarations of trust, Mrs. Barring did not create or specify any active duties to be performed by her as trustee. She stated that Patrick Gilligan and John T. Lenahan had paid fractional parts of the consideration and were therefore entitled to the interests in the property. She held the legal title of these undivided interests merely to convey. Such a trust in Pennsylvania, is a passive or dry trust [2] executed by the statute of uses. Appellees, in their brief of argument, say, "It was a dry trust." The statute is in force in Pennsylvania (Roberts's Digest of Select British Statutes (1847) p. 413) and provides, "Where any person . . . be seized . . . of . . . lands . . . to the use . . . of any other person . . . every such person . . . shall from henceforth . . . be seized . . . of . . . the same . . . lands . . . in such like estates as they had . . . in use."

As both legal and equitable estates so became vested in the beneficiaries on the delivery of the declarations of trust, they and Mrs. Barring became tenants in common as averred in paragraph 31 of the bill. The Act of June

---

[2] *Rife v. Geyer*, 59 Pa. 393; *Kinsel v. Ramey*, 87 Pa. 248; *Carson v. Fuhs*, 131 Pa. 256, 18 A. 1017; *Ahl v. Liggett*, 246 Pa. 246, 92 A. 202; *Behringer's Estate*, 265 Pa. 111, 108 A. 414; *Westcott v. Edmunds*, 68 Pa. 34, 37; *Phila. Trust, Safe Dep. & Ins. Co. Appeal*, 93 Pa. 209, 213; *Lee v. Hamilton*, 218 Pa. 468, 67 A. 780; *Morgan's Estate* (No. 1), 223 Pa. 228, 72 A. 498; *McCormick v. Sypher*, 238 Pa. 185, 188, 85 A. 1096; *Mylin v. Hurst*, 259 Pa. 77, 80, 102 A. 429.

24, 1895,[3] P. L. 237, 68 PS section 101, provides a right of action by "one or more of said tenants in common, not in possession," against a tenant "in possession" for "his or their proportionate part of the rental value of said real estate for the time such real estate shall have been in possession. . . ." It is conceded that Louise Barring, by her lessees, was in possession; she therefore became liable to account to her co-tenants. They took no steps to require her to account during her lifetime and stated at the trial that they ". . . desire only an accounting from the time of Mrs. Barring's death."

On her death, her heirs at law, defendants, took possession [4] and have since been taking the income, etc., without accounting to their co-tenants, the plaintiffs. The defendants are now liable to the plaintiffs pursuant to the Act of 1895; compare *Broadhurst v. Broadhurst,* 248 Pa. 594, 94 A. 237; *Lancaster v. Flowers,* 208 Pa. 199, 57 A. 526; *Duggan v. Duggan,* 291 Pa. 556, 140 A. 342; *O'Malley v. O'Malley,* 272 Pa. 528, 534, 116 A. 500;

---

[3] "AN ACT To provide for the liability of tenants in common in possession to their co-tenants out of possession."

"Section 1. Be it enacted, &c., That in all cases in which any real estate is now or shall be hereafter held by two or more persons as tenants in common, and one or more of said tenants shall have been or shall hereafter be in possession of said real estate, it shall be lawful for any one or more of said tenants in common, not in possession, to sue for and recover from such tenants in possession his or their proportionate part of the rental value of said real estate for the time such real estate shall have been in possession as aforesaid; and in case of partition of such real estate held in common as aforesaid, the parties in possession shall have deducted from their distributive shares of said real estate the rental value thereof to which their co-tenant or tenants are entitled." This Act was repealed "insofar as it relates to the Orphans' Court" by the Orphans' Court Partition Act of 1917, P. L. 337, 359, a comprehensive Act on the subject.

[4] In their answer, paragraph 3 of New Matter, defendants aver that ". . . after her death [defendants] have taken the responsibility of owners with reference to said properties."

*Cobbett v. Gallagher,* 339 Pa. 231, 235, 13 A. 2d 403; *Huffman Estate (No. 2),* 349 Pa. 21, 36 A. 2d 639.

While the effect of the statute of uses on the passive trust was to vest both legal and equitable estates in the beneficiaries without other conveyance to them, we think we may affirm so much of the decree as directs defendants to convey; defendants have not appealed from the decree. By affirming the decree, subsequent proceedings to settle the beneficiaries' title will be unnecessary: compare *Westcott v. Edmunds,* 68 Pa. 34, 37. While, to that extent, we may concur in the action of the learned court, we must reverse the denial of an account.

Section 1 of the Act of March 27, 1713, 1 Sm. L. 76, 12 PS section 31, provides that "actions for account" shall be brought ". . . within six years next after the cause of such actions" arose. Plaintiffs' claim is subject to that Act: Compare *Sieger v. Sieger,* 209 Pa. 65, 58 A. 140. This suit was brought, as we have said, on December 5, 1941. If defendants had abandoned possession of and had received no income from the premises for six years prior to bringing suit, the statute would be a bar, but it is not a defense in this suit because the receipts annually thereafter created new obligations each year to divide with the co-tenants as income was received. It is the fact that a new obligation arose each year of defendants' possession which distinguishes this case from the illustration given by the learned judge in his opinion when he said: "If these plaintiffs had loaned a sum of money to these defendants and had waited sixteen years before endeavoring to collect it, their right would have been barred." The same distinction makes the cases on laches cited by appellees inapplicable as reference to one or two typical cases will show. *Barnes & Tucker Co. v. Bird Coal Co.,* 334 Pa. 324, 5 A. 2d 146, was a bill to require an account of profits made in and prior to 1930; the bill was dismissed because not filed until more than six years later; no obligation arose within the six years.

In *Stimson v. Stimson,* 346 Pa. 68, 29 A. 2d 679, the bill was dismissed, inter alia, because it was not filed until many years after the consummation of the transaction sought to be set aside. In *Herriman v. Wilson,* 341 Pa. 126, 18 A. 2d 670, the bill, seeking to undo a transaction completed many years before, was dismissed.

Plaintiffs sued in time to recover their proportion of the income received during the six years immediately prior to the suit because, each year, defendants should. have divided with them the rental value for that period. Plaintiffs are therefore entitled to an account for rents, income and profits received during the six years prior to suit with interest which is payable from the dates when payment should have been made: *Huffman Estate (No. 2),* 349 Pa. 21, 36 A. 2d 639.

Decree affirmed in part and reversed in part; the record is remitted for the purpose of accounting; costs to be paid out of the fund to be accounted for.