## Kain Account

*Markowitz, Liverant, Boyle, Rauhauser & Kagen,* for accountant.

*K. F. Ralph Rochow* and *Harris C. Arnold,* for exceptants.

GROSS, P. J., December 19, 1955.—On July 27, 1955, George Hay Kain, Jr., a member of the York County Bar, filed in this court what purports to be his first and final account as trustee of certain funds held by him under his written declaration of an alleged inter vivos trust, dated August 6, 1954. A true and admittedly correct photostatic copy of said declaration of trust is attached to the petition for adjudication of his account and will be hereinafter quoted verbatim.

In his petition for adjudication, filed with his said account, the accountant states that the interested parties in said alleged trust are, Jennings B. Hartman, Paul M. Murphy, William H. Kain and the accountant, himself, and that his reason for filing the account is

"to determine the ownership and distribution of the funds and the real estate involved."

Under the rules of this court, said account was placed on the audit list of accounts to be heard on September 7, 1955.

On August 22, 1955, on petition of Paul M. Murphy and Jennings B. Hartman, two of the parties in interest, a rule (a citation) was issued to show cause why said account should not be stricken from the record for lack of jurisdiction in this court to entertain it, to which petition an answer was filed by the accountant on September 5, 1955. No replication was filed.

At a hearing held on October 3, 1955, the accountant testified at length in explanation of the origin and nature of the alleged trust and recited with considerable detail, his individual and personal activities in the administration thereof.

The accountant's testimony in relation to his activities in the administration of the trust is of doubtful relevancy inasmuch as he testified that his written declaration of the alleged trust, dated August 6, 1954, constituted the only writing which may be the basis of the proceedings in this court, but, inasmuch as only feeble objections were made to the accountant's testimony and no motion was made to strike it out, we will allow it to stand on the record and give it such weight and probative value as we think it deserves in enlightening the court as to what legal relationship was created between the parties.

From the entire record, and the testimony submitted, we find the following facts:

1. The photostatic copy of the declaration of the alleged trust, hereinbefore referred to, written on the letterhead of the law firm of Kain, Kain & Kain, of York, of which the accountant and his brother, William H. Kain, are members, reads as follows:

"August 6, 1954

"Mr. Jennings B. Hartman,
65 South Main Street,
Spring Grove, Pennsylvania
"Mr. Paul M. Murphy,
49 North Beaver Street,
York, Pennsylvania
"Mr. William H. Kain,
119 East Market Street,
York, Pennsylvania

"Gentlemen:

"As each of you knows, some months ago by our combined efforts an option to purchase the farm of Daniel M. Emig in West Manchester Township, York County, Pennsylvania, comprising approximately 133 acres of land, for $80,000, prior to July 1, 1955, was obtained in my name, and, I understand, recorded in the Office for the Recording of Deeds in and for York County by my brother William.

"As you all know, the sum of $500 was expended by our office in payment for the option, and there have subsequently been certain relatively small expenditures of money made by the office or by one or more of us; and we are about to enter into an agreement with the W. H. Long Company for an advertising brochure.

"I feel that as of the moment there is no necessity of dividing the various expenses so that each of us bears his own share thereof, and I am confident that all of us can have full confidence so far as those expenses are concerned.

"I do feel, however, that each of you is entitled to a letter from me evidencing my agreement with each of you that I hold the option for the equal benefit of the four of us, with the understanding that all promotional expenses will be borne equally by all of us and that all of us will meet to decide whether or not to exercise

the option and be given a full opportunity to participate equally in the exercise of the option.

"As of the moment, I see no reason for any more formal declaration of trust by me or the preparation of any other legal instruments to be recorded in the Court House, and I intend to be legally bound hereby; but if any of the three of you have any feeling whatever that any more formal agreement than this should be entered into, I want each of you to feel perfectly free to discuss such suggestions in order that each of us, our heirs and assigns, may be fully protected by the 'fruits of our labors.'

"Sincerely yours,

George Hay Kain, Jr."

2. The written option referred to in the foregoing quoted declaration of trust (accountant's exhibit no. 1) was procured by the accountant in his own name on April 12, 1954. By this option, Daniel M. Emig and Elizabeth E. Emig, his wife, for the consideration of $500, paid to them by the accountant, granted to the said George Hay Kain, Jr., the accountant, his heirs and assigns, the right to purchase, until July 1, 1955, their farm consisting of approximately 133 acres of land, situate in West Manchester Township, York County.

The option further provides that, in the event of the exercise of the option by the optionee, the optioners shall convey or cause to be conveyed to the optionee, *his nominee*, heirs or assigns, a deed of general warranty for the land described in the option, at the price of $80,000, and the sum of $500 paid for the option shall be considered as part payment of the purchase price. (Italics supplied.)

There are other provisions in the option which granted the right to the optionee, *his nominee*, agents and employes, the right to ingress, egress and regress during the running of the option, to make surveys,

soil tests and drainage facilities, at his own expense and that any loss or damage to the optionors as a result thereof is to be paid for by the optionee.

3. Subsequent to the procurement of and during the running of said option, the services of an experienced firm of engineers was employed to divide the land covered by said option into four plots and make blue prints thereof; an aerial photographer was employed to make photographs of said tract of land; numerous conferences were held between the parties in interest with reference to the sale of the several plots; the accountant made several trips to Philadelphia to consult with and secure the advice of friends for feasible plans which would inure to the best advantage to the parties in interest in the ultimate sale of said farm in its various parts. Paul M. Murphy, an experienced real estate broker, and the accountant took the aerial photographs and blue prints to the Western Maryland Railway Company, for the purpose of interesting said railway company as a purchaser of part of said farm. The accountant held numerous conferences with Metropolitan Edison Company and New York Wire Cloth Company, for the purpose of interesting them as purchasers of part of said farm. The Land Title Insurance Company of Philadelphia, the Tradesmens Bank and Trust Company of Philadelphia and numerous other experts were also consulted by the accountant for advice in the promotion and sale of this land.

In all of these promotional activities, looking to a resale of the land covered by the option, the accountant, from his testimony, perhaps may have been more active than any of the other three interested parties in the option, but his testimony is sufficiently pellucid to satisfactorily indicate that all of the interested parties had knowledge of these promotional activities of the enterprise and that they were intended to inure to the benefit of the four parties in interest.

4. On June 16, 1955, George Hay Kain, Jr., the accountant and ostensible owner of the option, irrespective of any consultations which he may have had with all parties in interest as required by the fourth paragraph of his declaration of August 6, 1954, exercised the option and, in conformity with the promotional scheme of dividing the farm into four plots, for resale purposes, he prepared four deeds of conveyance for said farm, one for each of the four plots, from the optionors to the York County National Bank of York, *his nominee*, which deeds were executed and delivered by the optionors to the optionee's nominee, the bank, on June 30, 1955, and the balance of the consideration, $79,500 paid by him.

5. The same day, to wit, on June 30, 1955, following the delivery of the four deeds above mentioned, George Hay Kain, Jr., and with the apparent knowledge and approval of all the parties interested, directed said bank, as his nominee, to convey three of said tracts to the various purchasers thereof for a total consideration of $128,874.58, which was received by said bank as his nominee.

6. By this time, if not before, disputes and disagreements had arisen between the interested parties of the nature and character of which we are not now informed and in which we are wholly disinterested, because of their irrelevancy to the issue presently before the court. These disputes and disagreements induced the parties, on the same day that said conveyances were made, to enter into a written agreement which, under the authority of Brunner v. Edwards, 337 Pa. 513, made the York County National Bank custodian of the said sum of $128,874.58, with authority and direction to pay therefrom the sum of $80,000 to George Hay Kain, Jr., to reimburse him for the acquisition costs of the Emig farm, and also to pay other expenses of the promotion of the enterprise and

the balance of the fund to be distributed by the bank as jointly directed, in writing, by the parties in interest, or as directed "by a final order, judgment or decree of a court having. final jurisdiction of the subject matter". The bank promptly paid the several sums authorized by the agreement of June 30, 1955, and holds the balance in its hands for further disposal as may be directed by the terms thereof.

7. In his principal personalty account, the accountant charges himself with the sum of $128,874.58, the total consideration received by his nominee for the three tracts of land sold and and takes credit thereagainst for various items, including the $80,000 paid to him by the bank, under the custodian agreement, leaving a principal personalty balance of $47,733.05. A principal realty account was also filed which shows a balance of $12,675.15, made up entirely of the value placed on the unsold fourth plot of ground, the legal title to which is still in the York County National Bank, accountant's nominee.

The primary question in this proceeding for the court's decision is: Does the orphans' court have jurisdiction to settle this account? The answer to this question depends upon whether or not the facts, as we have hereinbefore found them, create an express inter vivos trust as defined by and within the meaning and intent of section 102, paragraph (6) of the Orphans' Court Act of August 10, 1951, P. L. 1163. If these facts do create an express inter vivos trust within the meaning of this act of assembly, as contended by the accountant, this court has jurisdiction, but, on the other hand, Murphy and Hartman contend that the transaction was only a joint business adventure and that no express trust was created, or if an express trust was created, it does not affirmatively classify under said act, and this court does not have jurisdiction.

By reason of its length, we will not quote the act of assembly in full, but will hereinafter refer to its pertinent provisions.

It is fundamental that the orphans' court is a court of limited jurisdiction, the extent of which is determined entirely by statute. Any warrant for its action must be found in the language of the statutes which create and define its powers. When it is said that the orphans' court is a court of equity, all that is meant is that, in the exercise of its jurisdiction conferred by statute, it applies the rules of equity. Jurisdiction cannot be claimed because of its aspects as a court of equity: Douglas' Estate, 303 Pa. 227; Mains' Estate, 322 Pa. 243; Colison Estate, 356 Pa. 531.

Prior to the enactment of the Act of Assembly of June 26, 1931, P. L. 1384 (now repealed by the Act of 1951), amending section 9 of the Orphans' Court Act of June 7, 1917, P. L. 363, conferring concurrent jurisdiction with the court of common pleas, the orphans' court had no jurisdiction of inter vivos trusts: Douglas' Estate, supra; Wilson v. Board of Directors of City Trusts, 324 Pa. 545.

The amending act of June 26, 1931, without defining "inter vivos trust", seemed broad enough in its terms to extend the jurisdiction of the orphans' court generally to inter vivos trusts, but the courts did not think so and in the comments of the Joint State Government Commission to the various subparagraphs of section 102 of the 1951 Act, numerous lower court decisions are collated, in which "inter vivos trust" is defined and where the courts also held, in effect, that the 1931 act did not extend the jurisdiction of the orphans' court to cover all nontestamentary trusts, but only to an express trust of a continuing nature, requiring both administration and distribution, and that the proper test in determining the jurisdiction of the orphans' court over inter vivos trusts would seem to

require some analogy to a testamentary trust. We think these same two principles should be adhered to with respect to the construction of the 1951 Act.

See In re Stief, 32 D. & C. 289; Smith's Petition, 43 D. & C. 154; in re Moorshead Trustee, 66 D. & C. 182, and Weber's Trust, 50 D. & C. 538, and Fiduciary Review of June 1935, for extended comments on the Act of 1931.

It may be assumed that the legislature, by defining inter vivos trusts and by conferring jurisdiction in specific instances, and denying it in others, intended by enacting section 102 of the Orphans' Court Act of 1951, to codify and put into statutory form the various limitations of the jurisdiction of the orphans' court under the Act of 1931. Without quoting section 102 of the 1951 Act, it will be noted that, by the processes of affirmation and negation in conferring and limiting jurisdiction of the orphans' court, the maxim "inculsio unius est exclusio alterius" was intended to be observed.

In order to determine the status of the relationship between the parties to this transaction, it becomes important to analyze the nature of the transaction which gives rise to this proceeding and, in doing so, we are here concerned only with the relationship of the parties as between themselves and not with the situation involving third parties, or a liability existing by reason of a holding out, and further the status of their relationship must be determined as of the time of the initiation of the transaction out of which the relationship grew, unless subsequently changed by the consent of the parties or by operation of law. When this initial relationship was established by the parties, that status is presumed to continue until the contrary appears: Zuback v. Bakmaz, 346 Pa. 279.

The first question then is: What was the status of the relationship of the parties as of April 12, 1954, when the option was obtained?

Insofar as the record goes, it fails completely to show with any degree of clarity the individual activities of any of the parties looking towards the procurement of the option. We must rely entirely upon the undisputed facts set forth in the declaration of George Hay Kain, Jr., dated August 6, 1954, which show that for some months (meaning, of course, prior to April 12, 1954, the date of the option), by the combined efforts of the four parties, an option to purchase the Emig farm was obtained in the name of George Hay Kain, Jr., and that each of his associates is entitled to a letter from him evidencing the agreement with each of them that he was holding the option for the equal benefit of all four parties.

Of course, the purpose of the option was to eventually acquire title to real estate for the purpose of development and resale for the mutual benefit and profit of the parties in interest.

The record nowhere discloses the real purpose, reason or authority for the option having been taken in the name of George Hay Kain, Jr., to the exclusion of the names of his associates.

An option is not a sale. The optionee, however, does acquire the right to call for a conveyance of the land and it has been held that this *right to purchase constitutes a substantial interest* in the land, which may be sold and conveyed by the optionee. An option to purchase is analogous to a contract for the sale of the land and is in the nature of an encumbrance on the land itself: Detwiler v. Capone, 357 Pa. 495; Barton v. Thaw, 246 Pa. 348; Peoples Street Ry. Co. v. Spencer, 156 Pa. 85.

On the face of the option, George Hay Kain, Jr., became the *sole owner of a substantial interest* in the Emig farm, which he had the prima facie right to sell and convey to a purchaser but, for the purpose of showing that he was not the sole owner of the option

and in order to protect the interests of his associates in the option, he wrote and delivered the letter, dated August 6, 1954, to them, in which he acknowledges their respective fractional interest in the option, and thereby made it certain that each of them could enforce his rights in the option in the event of unforeseen circumstances they might be called upon to assert their rights through litigation or otherwise.

In the fourth paragraph of this letter, he says, inter alia:

*"I do feel, however, that each of you is entitled to a letter from me evidencing my agreement with each of you that I hold the option for the equal benefit of all four of us."* (Italics supplied.)

The above quotation admits of ambiguities from several viewpoints. It does not say whether the agreement with each of the parties was concluded and in effect before April 12, 1954, the date of the option, or was concluded and became effective after the option was taken. If it was concluded and in effect before he took the option on April 12, 1954, was he authorized to take it in his own name or did he do so in violation of his agreement not to do so?

If he was authorized or directed by said agreement to take the option in his own name, then the initial relationship between the parties was fixed by that agreement and, by virtue of the agreement, the parties became tenants in common: Stewart v. Brown, 2 S. & R. 461; Sheridan v. Coughlin, 352 Pa. 226; Morey v. Herrick, 18 Pa. 123; Zuback v. Bakmaz, 346 Pa. 279; Nick v. Craig, 301 Pa. 50.

Mr. Kain, under those circumstances, took and held the legal title to the option merely as a straw man for the benefit of his associates: In re Moorshead, 66 D. & C. 182. He could not, by a later declaration solely of his own, change the tenancy in common relationship to any other form of relationship. It was fixed by the agree-

ment of the parties and could only be changed with their agreement. A man may not ordinarily declare a trust of property which he does not own, or over which he has no control.

There is no trust relationship between tenants in common: Halstead v. Ross, 33 Del. Co. 440; 62 C. J. 419-442. Mr. Kain's letter of August 6, 1954, under these circumstances must be construed as an admission against interest only and estops him from denying that a tenancy in common was created between the parties: Brenneman Estate, 360 Pa. 558.

Therefore, if George Hay Kain, Jr., took title to the option in his own name pursuant to an agreement in existence at the time he did so, there was no trust of any kind created, and their subsequent operations of their common property was by virtue of their respective titles as tenants in common, because no other relationship can be implied between tenants in common: Zuback v. Bakmaz, supra; Dunham v. Loverock, 158 Pa. 197; Nick v. Craig, 8 Erie 23, 301 Pa. 50; De-Haven's Estate, 248 Pa. 271

Although there is a fiduciary relationship present in such case, it is in no sense the creation of a technical express trust, over which the orphans' court would have jurisdiction. This species of a fiduciary relationship is not analogous to a testamentary trust or an express trust of a continuing nature, requiring both administration and distribution, which it has been held under the authorities hereinbefore cited is the true test in determining the jurisdiction of the orphans' court over inter vivos trusts.

Let us now consider what the relationship of the parties would be if Mr. Kain took title to the option in his own name in violation of a prior agreement with his associates to have the title made in the names of the four associates.

We think there can be no doubt that in law and

equity the initial relationship of the parties would not have been changed thereby. True, a constructive trust would have arisen in favor of his associates, not because of his alleged declaration of a trust, but because morality, justice, conscience and fair dealing demand that the relation be established, and his declaration would again be only a declaration against interest and estop him from denying the prior agreement: Peoples-Pittsburgh Trust Company v. Saupp, 320 Pa. 138; Hamberg v. Barsky, 355 Pa. 462. This court, however, does not, under the express provisions of section 102 (6) (vi) of the Orphans' Court Act of 1951, have jurisdiction over constructive trusts.

Let us now suppose that no agreement existed between the parties prior to the taking of the option, but an agreement was made subsequently between the parties sometime on or before August 6, 1954, the date of the letter, and Mr. Kain made his declaration in accordance therewith, then what would be the relationship of the parties?

In the first place, Mr. Kain, in his letter or declaration of trust, if we may call it such, of August 6, 1954, did not create or specify any active duties to be performed by him as trustee. He simply states that the option was procured by the combined efforts of the four associates and that he made the declaration for the purpose of evidencing his agreement with each of his associates that he held the title to the option for the equal benefit of all of his associates in the promotion of their joint enterprise.

True, his declaration, standing alone, and in the absence of any agreement prior to obtaining the option, did create a trust, but such a trust in Pennsylvania is a passive or dry trust executed by the statute of uses. As both legal and equitable estates so became vested in the beneficiaries on delivery of his letter or declaration of trust, dated August 6, 1954, they and

Mr. Kain became tenants in common, and we are back again to the same and original initial relationship: Sheridan v. Coughlin, 352 Pa. 226; Sheasley Trust, 366 Pa. 316; Bergland Estate, 372 Pa. 1; Eaves v. Snyder, 368 Pa. 459.

The subsequent exercise of the option by Mr. Kain and having had title to the land made in the name of The York County National Bank, his nominee, did not in any manner or form change the true initial relationship of the parties as tenants in common. The bank as his nominee became Mr. Kain's straw man in taking and holding title to the land, and, as we have already pointed out, is a mere custodian of the moneys in its possession, which it received as proceeds from the sale of parts of the land.

In conclusion, we quote from the syllabus of Butler Savings Bank v. Osborne et al., 159 Pa. 10, as follows:

". . . tenants in common engaged in the improvement or development of the common property will be presumed, in the absence of proof of a contract of partnership, to hold the same relation to each other during such improvement or development as before it began. As to third persons, they may subject themselves to liability as partners by a course of dealing or by their acts and declarations, but as to each other their relation depends on their title, until, by their agreement with each other, they change it."

Without intending to express any opinion on the merits of any of the disagreements or disputes which have arisen between the parties, we think it proper to say that Mr. Kain is to be commended for his willingness to furnish an accounting of their joint enterprise, so that the rights of all of the parties may be adjudicated according to justice and equity, but he must go into a court of competent jurisdiction to do so.

Since the argument, counsel for George Hay Kain, Jr., the accountant, has filed written requests for the

correction of certain alleged errors in the transcript of testimony. We have examined counsel's requests and, after refreshing our recollection of the testimony and having had the reporter's stenographic notes read back to us, we thought it proper and have made a number of corrections shown with ink in the official transcript of the testimony, which appear to be more typographical than of substance. We refuse to make any other changes in the testimony. The requests have been filed of record.

We, therefore, enter the following

### Decree

And now, to wit, December 19, 1955, it appearing to the court that the account under consideration does not relate to an express inter vivos trust or any other transaction properly within the jurisdiction of the orphans' court, it is, therefore, ordered, adjudged and decreed that the prayer of the petition to strike from the record the account of George Hay Kain, Jr., is granted and said account is hereby ordered stricken from the record for want of jurisdiction to audit and settle the same.

The parties to the proceeding shall bear their respective costs.