## Updegrove Estate

*H. Joseph Hepford* and *Myers, Myers & Flower*, for Humane Society of Harrisburg.

*W. E. Shissler* and *James R. Humer*, for Sophia Oyster Marks.

*Russel B. Updegraff*, for executors.

JACOBS, J., May 8, 1956.—Hazel V. W. Updegrove died July 5, 1950, leaving a will which since her death

has been probated and is of record in the office of the register of wills in Cumberland County in Will Book no. 55, p. 46. Letters testamentary were duly issued by the register of wills of Cumberland County to Joseph B. James, Sr., Raymond E. Westhafer and Jacob H. Reiff, the executors named in her will, which letters are still in full force and effect.

In paragraph 18 of the will, Mrs. Updegrove provided as follows:

"I order the Executors hereinafter named to hold in trust for the Humane Society of Harrisburg, Pennsylvania, the Hazel Oyster Updegrove farm, formerly known as the Glen Wood Farm, Mechanicsburg, R. D. 5, Pennsylvania, situated in Hampden Township and Lower Allen Township, as a home or reservation for animals that have outlived their usefulness, especially dogs, horses, cows and cats. In the event that this farm will not be used for this purpose after a trial period of three years, this farm shall revert back to the estate."

Decedent had only one farm at the time of her death which was known as Glen Wood Farm, but it is situated in Hampden Township and Silver Spring Township. It was agreed by all the parties in interest that the farm in Hampden and Silver Spring Townships, of which decedent died seized, was the farm referred to and intended to pass under paragraph 18 of her will, above quoted.

On February 26, 1953, the Humane Society of Harrisburg presented a petition asking this court to award a citation directing the executors of Mrs. Updegrove's will to answer said petition and show cause why they should not deliver to the Humane Society possession of the farm described in paragraph 18, and account to the Humane Society for all rents, income and profits received by them from said farm since the death of decedent. Said citation, which was awarded, was also

directed to Sophia Oyster Marks, described as heir and next of kin of decedent, who filed an answer to the petition and citation. In said answer Mrs. Marks averred that the Humane Society was not entitled to possession of the farm nor to the income therefrom, and further averred that the Humane Society did not have corporate power to take possession of the farm or to operate it.

Testimony was taken before the court on October 29, 1954, and on November 8, 1954. At these hearings the Humane Society, the executors and Mrs. Marks were all represented. The executors presented an accounting of income received and expended in the management of the farm since the death of decedent. The articles of incorporation of the Humane Society of Harrisburg were placed in evidence. A complete description of the farm situate in Hampden Township and Silver Spring Township, Cumberland County, containing 155 acres and 14 perches, and being the farm referred to in paragraph 18 of the will of decedent, was placed on the record. When Mrs. Updegrove died there was a tenant occupying and farming the farm. That tenant left the farm in 1951 and the executors rented the same to Raymond Brackbill, who has farmed the farm since that date at an annual money rental of $1,000. Mr. Reiff, one of the executors, testified that two or three years after the death of Mrs. Updegrove, he attended a meeting with the attorney for and the President of the Humane Society of Harrisburg, at which time on advice of counsel the executors refused to turn the farm over to the Humane Society. At that meeting the executors informed the Humane Society that they had placed a reservation in the lease they had entered into with Brackbill reserving for the Humane Society the right to put animals on the farm if they compensated the tenant. The Humane Society has never at any time placed any animals on this farm.

Mr. Reiff further testified that at the meeting with the Human Society and representatives, it was decided that the Humane Society should take appropriate action in court to have their rights determined and that the farm should remain in the possession of the executors pending such court decision. Mrs. Claybaugh, the President of the Harrisburg Humane Society, testified as to the meeting in 1952, and stated that Mr. Updegraff said that it was the decision of the executors that the Humane Society should take the matter to the courts for disposal. Mrs. Claybaugh further stated that the Humane Society was never offered possession of the farm, but that Mr. Reiff had stated that there was a provision in the lease saying that the Humane Society could put animals on the farm. This she stated was not a satisfactory arrangement because of the lack of the house (which was rented) to put an attendant in and the need to repair the buildings before they were fit for the purpose.

In her testimony Mrs. Claybaugh stated that if the farm had been turned over to the Humane Society they could have operated it as a farm and used the income to defray the expenses of operating it as a shelter. She also said that the Humane Society at present keeps two different kinds of animals at its shelter. These are young dogs and cats that can no longer be kept by the owners, and also the aged and infirm animals. They also pick up and shelter stray animals which have no homes, of all sizes and ages. From the testimony it becomes apparent that the Humane Society believes that it is entitled to full possession of the farm for the purpose of placing animals there, and that the trial period of three years does not begin until such possession is received. It is also apparent that the executors are of the opinion that they were to retain all the rents and income from the farm and that the only right of the Humane Society was the right to place animals on

the farm, and that such right arose as soon as Mrs. Updegrove died and that the trial period began to run at the time of her death. Being completely unable to agree upon the disposition of this farm, the executors and the Humane Society felt that the dispute could be settled only by having the problem submitted to the court.

Requests for findings of fact and conclusions of law were filed by the executors, the Humane Society of Harrisburg and Sophia Oyster Marks. Each of the parties filed a brief on his behalf and the case was argued before the writer of this opinion on April 17, 1956. It is the contention of the Humane Society that fee simple title to the farm vested in it on the death of Mrs. Updegrove and that it was entitled to possession of the farm on her death and is entitled to receive all of the income which has arisen from the farm since her death. Sophia Oyster Marks, in her brief, does not consider the question of what title the Humane Society may take under paragraph 18 of decedent's will, but contends that under its charter the Humane Society has no power to do business outside Harrisburg, and therefore cannot hold, own or possess real estate in Cumberland County, nor, she contends, can it do business in Cumberland County. The executors in their brief contend that the trust is an active one imposing active duties on the trustees and that the farm has reverted to the estate because the Humane Society has not used the farm as a home for animals that have outlived their usefulness for a period of more than three years since decedent's death.

This court feels that the position of Sophia Oyster Marks that the Humane Society of Harrisburg does not have the power under its charter to hold any interest in real estate in Cumberland County is not supportable. The charter of the Humane Society of Harrisburg, as amended in 1927, provides that it is formed

for the purpose of preventing cruelty and for that purpose to use every effective means, "in Harrisburg and vicinity." Although it was originally formed under the Corporation Act of 1874, it is now deemed to exist under the Nonprofit Corporation Law of May 5, 1933, P. L. 289, and the provisions of the Act of 1933 govern this corporation; 15 PS §2851.3. Section 301 of the Act of 1933, 15 PS §2851-301, provides as follows: "A nonprofit corporation shall have the capacity to act possessed by natural persons, but shall have authority to perform only such acts as are necessary or proper to accomplish the purpose or purposes for which it is organized and which are not repugnant to law." Section 302 (4) of the same act gives to every nonprofit corporation, subject to the limitations and restrictions contained in its articles, the power: "To purchase, take, receive, lease as lessee, take by gift, devise or bequest, or otherwise acquire, and to own, hold, use, and otherwise deal with any real or personal property, or any interest therein, situated in or out of this Commonwealth, which may be appropriate to enable it to accomplish fully and properly its corporate purpose or purposes."

Certainly it was the intent of this act to give to nonprofit corporations the power to hold real estate or any interest therein which is necessary or appropriate to enable them to carry out their purposes. We hold that the Humane Society of Harrisburg is empowered by its charter and the Nonprofit Corporation Law of 1933, to take whatever interest it may have been given by Mrs. Updegrove in this farm situated in the eastern end of Cumberland County, within a few miles of the City of Harrisburg. Such holding is appropriate to help carry out the purposes of the corporation to prevent cruelty, "in Harrisburg and vicinity".

The chancellor feels that the question which is presented to him and is decisive of this case is a narrow

but difficult one; namely: Is the trust created under paragraph 18 of the will of Mrs. Updegrove an active or passive trust?

If the trust is a passive one then it has no purpose and it will be executed by the statute of uses and the entire title to the farm will immediately vest in Humane Society of Harrisburg. The statute of uses is in force in Pennsylvania: Sheridan v. Coughlin, 352 Pa. 226; Eaves v. Snyder, 368 Pa. 459. If the trust is an active one then it is the duty of the trustees to manage the farm and make certain that the same is used by Humane Society of Harrisburg for the purposes set forth in the will of decedent.

In the early cases in Pennsylvania, there was a definite tendency on the part of our appellate courts to lean toward finding trusts passive. In close cases the courts tended to favor the beneficiary rather than the donor and executed the trusts. The case of Dodson v. Ball, 60 Pa. 492 (1869), analyzes the prior cases and supports a policy of upholding the wishes of the donor wherever possible. Although striking down the trust before it, this case appears to have fixed a policy of favoring the donor which has been followed in many later cases.

The tendency of the appellate courts to find trusts active where possible is apparent in Deniston v. Deniston, 263 Pa. 224; Buch's Estate, 278 Pa. 185; Bergland's Estate, 372 Pa. 1. In Buch's Estate the trust was sustained in order to protect remainders. In this case Justice Sadler analyzed the applicable law as follows:

"It is undoubtedly true that, if no active duties are imposed, and the holding of the amount in hand is not required to protect interests of others, the trust will be held to be passive, and, upon proper application, the principal will be turned over. . . . *But in considering the effect of such provision in a will, the intention of*

*the donor, and not the desire of the beneficiary, is the primary and controlling consideration.* Active or special trusts are those in which, either from the express direction of the language creating them, or from their very nature, it is apparent the trustees are charged with the performance of active and substantial duties with respect to the control, management and disposition of the property . . . If the party in whose favor it was created is sui juris, and there is no limitation over of income or principal, and no ultimate purposes ·of any kind requiring its continuance expressed, except such as is implied from the direction to pay over income, a termination may be decreed . . . but the whole will must be examined to discover the purpose of the testator." (Italics supplied.)

In the Bergland case, testator gave his residuary estate to a trust company in trust (a) to distribute the entire amount so received to his sister in Sweden, providing that the trustee should make payment " 'after having proved to its own satisfaction that my sister so named is the person to which I refer' " (b) to make transmittal of the funds " 'by any accepted means that it deems fit'." It was held that testator created an active trust. The court said that the trustee had the active and important duty of making payment only after having proved to its own satisfaction that the distributee was in fact the sister of testator. Also the trustee was directed to transmit the funds by any accepted means that it deemed fit. The court concluded its findings by saying: "These testamentary provisions clearly impose upon the trustee active duties and a personal discretion." Justice Bell, who wrote the opinion of the court in 1952, had this to say about active trusts:

"An active trust may be created as a protection to the beneficiary or for any purpose whatsoever provided the purpose is not illegal."

Justice Bell, in the Bergland case, also quoted the following paragraphs from prior cases with approval:

" 'We held in Rife v. Geyer, 59 Pa. 393, that whenever it is necessary for the accomplishment of any object of the creator of the trust that the legal estate shall remain in the trustee, the trust is a special active one'.". . .

" ' "One possessed of testamentary capacity, who makes a will in Pennsylvania, may die with the justifiable conviction that the courts will see to it that his dispositions, legally made, are not departed from by those charged with the duty of performance, or improperly defeated by agreement between those upon whom he bestowed his bounty" '."

In light of the above decisions we are of the opinion that the trust established under the 18th paragraph of the will of Hazel V. W. Updegrove is an active one. Imposed upon the executors, who are named trustees, are the active duties of making certain that the farm is used as a home or reservation for animals that have outlived their usefulness. The Humane Society of Harrisburg is engaged in many other activities, such as picking up young animals and strays, distributing literature and propaganda in furtherance of its purpose to prevent cruelty to animals. Neither the farm nor any of the revenues derived therefrom may be used for any of these purposes other than the purpose of providing a home for animals that have outlived their usefulness. The trustees have the active duty of seeing that this purpose named in the will is carried out and the discretionary duty of determining in the first instance whether or not the purpose is being accomplished.

This we believe was the intention of testatrix. She was apparently interested in the future of old, worn-out animals, and desired to make certain that they would have a home. Her interest was not in the other,

varied activities of the Humane Society. She therefore placed the farm in trust in order that her limited purposes could be carried out. As indicative of her interest in seeing her purpose carried out is the final provision in this paragraph of her will that: "In the event that this farm will not be used for this purpose after a trial period of three years, this farm shall revert back to the estate."

In Frantz v. Race, 205 Pa. 150, testator provided as follows:

" 'I give and bequeath to my son John Frantz the farm on which I now live after the death of my wife Sarah M. Frantz, the title of said farm to be and remain in the hands of my Executors, who are to take charge of said farm at any time when the said John Frantz lets the farm, or income thereof is wasted, and the Executors to take charge of the farm and pay the said John Frantz the income or profits therefrom.' "

The court held that this trust was an active one because the executors named as trustees were to take possession of the farm in two contingencies: "If he lets the farm" or "Income therefrom is wasted." The decision was necessitated by the fact that John attempted to convey fee simple title in the farm. Although the Frantz case is not a direct precedent for the case now before the court, we are of the opinion that the duties imposed upon the executors or trustees under Mrs. Updegrove's will are greater than those imposed upon the trustees in the Frantz case.

What then are the duties of the trustees in regard to this farm? They should manage the same and turn the net income therefrom over to Humane Society of Harrisburg to be used by them only in furtherance of the purposes of the trust. The Humane Society of Harrisburg should be given possession of so much of the farm as is necessary to create a home for animals that have outlived their usefulness. How much of the farm and

buildings are necessary for this purpose should be determined by the trustees in their discretion, and the balance of the farm should be devoted to producing an income which, as we have heretofore stated, after the deduction of expenses and proper charges should be paid to Humane Society of Harrisburg to be used for the purposes of the trust. Humane Society should be required to account to the trustees for all funds expended in order that the trustees may determine whether or not the provisions of the trust are being followed.

We feel that a duty to manage the farm and produce income therefrom is implied from the finding that this trust is active. Such duties are a part of the normal duties of an active trustee. In Stambaugh's Estate, 135 Pa. 585, in holding a trust active, the court stated that the duty to invest the fund was implied from an order to pay over the interest. In the case before the court we are carrying such implication further and find that a duty to manage and produce income is implied from the creation of an active trust.

It is apparent from the testimony that the executors and the Humane Society felt that the disposition of the farm could not be determined without a court decision. The executors were therefore unwilling to turn over the farm to the Humane Society and the Humane Society was unwilling to proceed under the arrangement suggested by the executors where the Humane Society would receive no income whatsoever from the farm. In view of these facts we find that no trial period has as yet begun and will not begin until this opinion becomes effective. The Humane Society is not entitled to any income received from the farm prior to the beginning of the trial period.

Our courts have often stated that charities are favorites of the law in Pennsylvania, and courts hate to interfere with trusts for them so long as the donor's

intentions are being carried out. If we should terminate this trust we would lose supervision of the trust and thereby possibly deprive these animals of the benefits which Mrs. Updegrove intended them to receive. See Unruh's Estate, 248 Pa. 185.

The relevant facts have been recited in the foregoing opinion. No formal findings of fact have been made because there is no substantial dispute as to the facts.

And now, May 8, 1956, at 3:30 p.m., it is decreed that the trust set forth in paragraph 18 of the will of Hazel V. W. Updegrove, of Glen Wood Farm, Mechanicsburg, R. D. 5, which is found to be situated in Hampden Township and Silver Spring Township, Cumberland County, containing 155 acres and 14 perches, as fully described on pages 11 and 12 of the notes of testimony taken October 29, 1954, is an active trust to be administered by the executors named in the will of decedent, and their successors, in accordance with the foregoing opinion.