## Eshelbrener Estate

*Arnold, Bricker, Beyer & Barnes*, for accountant.

*Windolph, Burkholder & Hartman,* for St. John's Episcopal Church of Lancaster.

*Henry F. Gingrich* and *John A. O'Brien,* for objectors and petitioners.

APPEL, J., June 22, 1972.—Marian F. Henderson has filed objections to the account and has petitioned for an order impressing a trust on funds in the hands of the executor. Both proceedings stem from the same facts.

On January 5, 1950, decedent and her then husband, Robert E. Eshelbrener, conveyed premises 315 East Clay Street, Lancaster, Pa., to Patricia Brown. Patricia Brown, on the same day, executed a declaraation of trust that she held the property in trust for Anna E. Eshelbrener, her heirs and assigns. The instrument stated that Patricia Brown would convey the premises upon request by Anna E. Eshelbrener in such manner as shall be reasonably required. The questions presently before the court arise from the following paragraph:

"Should the aforesaid Anna E. Eshelbrener die or become incompetent without first having directed me, the said Patricia Brown, to convey the aforesaid premises to anyone, I do hereby declare that I will, within thirty (30) days of the aforesaid death or incompetency, convey the aforesaid real estate to the heirs of Anna E. Eshelbrener, in fee simple."

Anna E. Eshelbrener died March 7, 1970, a resident of 315 East Clay Street. She had not directed Patricia Brown to convey the premises during her lifetime. The will of decedent, dated May 8, 1950, contains several small legacies. It bequeaths the residue, after a life estate which failed because of prior death, to St. John's Episcopal Church of Lancaster, Pa.

The executor, upon learning that title to the real

estate was still in the name of Patricia Brown, obtained a conveyance of it from her and thereafter sold the premises and accounted for the proceeds. Timely objections to the inclusion of the proceeds in the account were filed by one of decedent's blood-related next of kin. She also filed a petition for an order impressing a trust on said funds. By this petition, the blood-related heir sought, first, to approve the sale of the realty and of the expenditures in connection therewith, and, secondly, to obtain an award of the net proceeds to herself and other individuals related to decedent in the blood line.

A hearing on the objections and petition was held but, before adjudicating the matter, we were told of the discovery of information, and subsequently of evidence, that Anna E. Eshelbrener had been adopted by Hoover G. Dougherty on May 11, 1933. It was thereupon apparent that the then, i.e., the original, objector and petitioner was not related to decedent because of decedent's removal from the blood line. We, therefore, sua sponte, on February 8, 1972, entered an order opening the audit and directing that notice thereof be given to those who may be ascertained to be heirs of decedent and by publication.

Prior to the reopened audit, appearances had been entered in behalf of Willard T. Taggart and William A. Flora whose positions are the same as that of Marian F. Henderson. They were represented at the reopened audit by their attorneys. They are the individuals who would be entitled to take under the intestate laws because of the relation to decedent through decedent's adoption by Hoover G. Dougherty. The objections and petition which were filed by the relative by adoption are similar to the objections and petition originally filed by the blood relative. It has been stipulated that the record of the hearing may be

considered by the court in its determination of the matter.

At the hearing, the legatee offered John W. Beyer, Esq., the scrivener of the instrument, as a witness to testify about the circumstances of the execution of the declaration of trust. The testimony was objected to and we reserved our ruling thereon.

Henry, Pennsylvania Evidence, Vol. 2, at page 12, says:

"But if the language is doubtful or equivocal in meaning and capable of more than one construction, parol evidence is admissible to show the sense in which the words were intended to be used."

In the instant case, the testimony was as to the circumstances of the transaction and not as to the sense in which the words were intended to be used. Obviously, the meaning of the word "heirs" can be doubtful or equivocal. Its meaning is the basis of the entire controversy. The church argues that the word here is one of limitation, i.e., that the identity of the person holding the estate is known and the word "heirs" marks the duration of the estate in that individual. The intestate next of kin argue that it is a word of purchase, i.e., it denotes the person who is to take the estate.

We have concluded that the testimony is admissible for the purpose of establishing the circumstances of the transaction or the context in which the word was used so that the court may thereby be assisted in the determination of the sense in which the word was used.

The testimony establishes that prior to and at the time the deed was executed Anna and her husband were having marital difficulties. They had separated and had worked out a settlement as to who was to get what. Anna was to get the house. Since she didn't

know what she intended to do with the realty, it was suggested that the property be conveyed to a trustee to hold for her. Accordingly, the property was conveyed to Patricia Brown, then the receptionist in Mr. Beyer's office. Subsequently, on December 14, 1953, a divorce decree was entered in a suit by Robert E. Eshelbrener against Anna E. Eshelbrener in Prince Georges County, Md. Although the reason for the trustee thereby disappeared and although decedent continued to reside in the realty until death, she at no time requested that the property be conveyed to her.

It may well be that since the trust is a dry trust, both legal and equitable title vested in the cestui que trust, Anna E. Eshelbrener: See Sheridan et al. v. Coughlin, 352 Pa. 226; Overbeck v. McHale, 354 Pa. 177; In re Decker Estate, 353 Pa. 509. We believe that our conclusion need not be bottomed on this principle but may be based on the determination that the word "heirs" was used as a word of limitation.

The Court of Appeals of Kentucky has aptly stated the universal rule in McKnight v. Black, 43 S.W. 2d 53 (1931), at page 54, as follows:

". . . we approved the universal rule as adopted by all courts that the words 'heirs,' 'heirs of the body,' and other expressions of similar import, are usually words of limitation and not of purchase, and that they will be given such effect, unless it appears from the context of the writing containing them that it was the intention and purpose of the one who executed it to attach to them a different significance, so as to compel the interpretation that they were employed as words of purchase."

We believe that there is nothing in the declaration of trust to render the universal rule inapplicable. On the other hand, it is the court's opinion that the circumstances themselves clearly establish that the

words were used as words of limitation. We refer to the fact that the trustee would convey within 30 days of death or incompetency to the heirs of Anna E. Eshelbrener. Standing by itself, if the instrument had only provided for conveyance after death, we would have difficulty. However, death is not the only event mentioned; it and incompetency are used together. It is inconceivable to the court that anyone would intend that an individual's interest in property would be terminable because of incompetency. The conclusion that objector-petitioner urges upon us would require that had it been necessary to declare Anna E. Eshelbrener incompetent during her lifetime, then upon that event her heirs would be entitled to the realty. It may well be that the words "personal representative" and "guardian" would have stated the intention of the parties with much greater clarity. We are unable to find from the words used and the circumstances of the transaction any basis from which to conclude that incompetency would terminate the interest of Anna E. Eshelbrener. It is clear that the word "heirs" in the present instrument is one of limitation and not of purchase; therefore, the realty was owned by decedent at her death and her personal representative properly acquired legal title thereto so that it might be sold and the net proceeds be distributed as a part of her estate.

We believe that the following words of Mr. Justice, later Chief Justice Kephart, in Mayhew's Estate, 307 Pa. 84, 87, are particularly applicable:

"The intention of a testator is to be gathered from the meaning of words used in his will. Where words used might under a given construction lead to a result that is highly improbable, the court will lean toward a construction that will carry out the natural intention of the testator."

## ORDER

And now, June 22, 1972, for the foregoing reasons the objections to the account and the petition to impress a trust are dismissed.